IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYNN OXENBERG and RONALD LEWIS<br><br>*Plaintiffs,*<br><br>v.<br><br>ALEX M. AZAR II, in his official capacity as Secretary of the United States Department of Health and Human Services,<br><br>*Defendant.* | Civil Action No. 20-738-CMR |

**DEFENDANT'S SUR-REPLY TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF
HIS CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

The sole issue to be decided in this case is:  Was the Defendant estopped from denying the two claims for Medicare coverage presently on appeal because another ALJ allowed coverage for certain other months of Plaintiffs' TTFT claims?  Pl. Reply at 5 [Dkt. No. 23].[1] Plaintiffs, however, have not identified any case holding that an ALJ's claim determination is binding upon the Secretary of Health and Human Services (the "Secretary") in future cases for the same treatment.  Plaintiffs do not dispute that collateral estoppel cannot be applied to an administrative adjudication if doing so would be contrary to agency regulations or statute.  That is precisely the case here.  Plaintiffs admit that a Medicare ALJ decision has no "precedential

---

[1]     Because Plaintiffs withdrew their request for prospective relief, Pl. Reply at 5, the Court need not address the arguments in Sections IV.B.3 (Presentment and Channeling), IV.B.4 (Appropriations Clause), or IV.B.7 (Changed Circumstances) of Defendant's Memorandum in Support of Summary Judgment [Dkt. No. 17] ("D. Mem.").

effect," a defined regulatory term meaning that no factual finding or legal analysis in such a decision is binding in future cases.  CAR at 55; D. Mem. at 13-20; 42 C.F.R. § 401.109(d).

Plaintiff also fails to refute that the Medicare statute forbids the application of collateral estoppel to ALJ decisions.  The Medicare Appeals Council (the "Council") could not fulfill its statutory duty to review a claim appeal "de novo" while being bound to accept an ALJ's determination that TTFT is covered by Medicare.  42 U.S.C. § 1395ff(d)(2)(B).  Notably, the Third Circuit held that the Council "is free to depart from these lower level agency rulings [from QICs and ALJs] without concern, as *only its decisions have legal significance.*"  *Taransky v. Sec. U.S. Dep't of Health & Human Servs.*, 760 F.3d 307, 319 (3d Cir. 2014) (emphasis added); *see also John Balko & Assocs., Inc.*, 555 F. App'x 188, 193 (3d Cir. 2014) (holding that the Council's "review of the ALJ's findings is *de novo* and [the Council] *is not obligated to defer to the outcomes of prior decisions below.*") (emphasis added and citation omitted).  These Third Circuit holdings directly refute Plaintiffs' collateral estoppel argument, and the Fourth, Fifth, Seventh, Ninth, and D.C. Circuits have each rejected Plaintiffs' assertion that lower-level administrative decisions are binding upon federal agencies.  D. Mem. at 17-20.

In addition, the elements of collateral estoppel are absent, because identical issues were neither decided nor litigated in Plaintiffs' claim appeals.  Finally, Plaintiffs fail to show that offensive collateral estoppel in this context would be fair to the Secretary.  If the Secretary prevails on any of these arguments, summary judgment should be granted in his favor.

## II.   **STANDARD OF REVIEW**

Even under the standard of review Plaintiff asserts, Pl. Reply at 8, the ALJ decisions on appeal were not arbitrary and capricious.  *See Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (the "scope of review under the arbitrary and capricious

standard is narrow and a court is not to substitute its judgment for that of the agency."). It was not arbitrary and capricious for the ALJs to decline to apply offensive mutual collateral estoppel, because Plaintiffs *never* raised that argument before them. Plaintiffs' favorable rulings were not in the record before the ALJs. CAR at 103-180 (Oxenberg); CAR at 803-92 (Lewis). Plaintiff Oxenberg did not assert collateral estoppel in her Appeal or Pre-Hearing brief (CAR at 122-29, 179-80); she only mentioned *non-mutual* collateral estoppel in a post-hearing letter and at oral argument, both times in passing. CAR at 131, 719 (asserting that another beneficiary in an appeal ending 8352 received a favorable decision).[2] Plaintiff Lewis did not raise collateral estoppel at all before the ALJ. CAR at 887-892, 901-03, 4793-4822. Because APA review considers the "administrative record already in existence, not some new record made initially in the reviewing court," the ALJ decisions on appeal were not arbitrary and capricious. *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

At a minimum, Plaintiff does not contest that the "substantial evidence" test applies to "factual conclusions" in appeals arising under section 405(g), such as these. Pl. Reply at 8; *see also* D. Mem. at 9-10. Because Plaintiffs' favorable decisions were not before the ALJs, there was no reason for the ALJs to make any findings regarding those decisions. Therefore, it cannot be said, nor do Plaintiffs argue, that the ALJ decisions at issue lacked substantial evidence.

### III. ARGUMENT

    **A. The Common Law Doctrine of Collateral Estoppel is Inapplicable to ALJ Decisions in Medicare Claim Appeals.**

        **1. ALJ decisions expressly do not bind the Secretary in future cases.**

Plaintiffs do not dispute that collateral estoppel cannot be applied to an ALJ decision if

---

[2]    This is not the favorable decision for Plaintiff Oxenberg, dated June 3, 2019, which has an appeal number ending 8241. Ex. A to Pl. Br.

3

doing so would "frustrate congressional intent or impede the effective functioning of the agency." *Duvall v. Atty. Gen. of U.S.*, 436 F.3d 382, 387-88 (3d Cir. 2006) (citing *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108-11 (1991)); *see Astoria*, 501 U.S. at 108 (explaining that "the question is . . . whether administrative estoppel . . . is intended by the legislature"). There is no dispute that the Medicare regulations prohibit ALJ decisions from having "precedential effect." D. Mem. at 12-15; CAR at 55. The lack of "precedential effect" means that any factual findings or legal analysis in ALJ decisions are not binding in future cases. *See* 42 C.F.R. § 401.109(d); *see Taransky*, 760 F.3d at 319 (noting that ALJ decisions do not have legal significance in future cases). To remove any doubt, the regulations also provide that a decision to depart from an LCD (as the ALJs issuing favorable decisions did here) "applies only to the specific claim being considered." D. Mem. at 14; 42 C.F.R. § 405.1062(b). In sum, the regulations explicitly reject Plaintiffs' assertion that a favorable ALJ decision collaterally estops the denial of a future claim. Meanwhile, Plaintiffs' discussion of "precedential" federal court decisions is irrelevant because ALJ determinations are at-issue here and the term "precedential effect" is defined under the Medicare regulations. Pl. Reply at 15.

Plaintiffs also fail to show that giving preclusive effect to ALJ decisions is consistent with the Council's statutory duty to "review the case *de novo*." 42 U.S.C. § 1395ff(d)(2)(B). It would be logically impossible for the Council to be estopped by an ALJ's factual or legal conclusions while simultaneously giving those conclusions no weight for purposes of *de novo* review. The Third Circuit agrees, noting that "[a]lthough [the Council] is limited to considering only the record before it, its review of the ALJ's findings is *de novo* and [the Council] 'is not obligated to defer to the outcomes of prior decisions below.'" *Balko*, 555 F. App'x at 193 (citing *Almy v. Sebelius*, 679 F.3d 297, 310 (4th Cir. 2012), and section 1395ff(d)(2)(B)). Likewise, in

*Taransky*, the Third Circuit rejected plaintiff's assertion that the Council's decision was "inconsistent with previous determinations by QICs and ALJs," holding that the Council "is free to depart from these lower agency rulings without concern, as only its decisions have legal significance." 760 F.3d at 319. The Third Circuit added that "[n]owhere does any policy or regulation suggest that the [Council] owes any deference at all to—much less is bound by—decisions of lower reviewing bodies addressing different disputes between different parties." *Id.* (quoting *Almy*, 679 F.3d at 310).

Finally, Plaintiffs' discussion of *de novo* review outside the Medicare context is patently irrelevant. Pl. Reply at 16-17.[3] The issue here is not the standard for appellate review of a trial court's order applying collateral estoppel, but rather whether the application of collateral estoppel to ALJ decisions would frustrate the Council's statutory duty to review such decisions *de novo*.

### 2.   Collateral estoppel on the basis of ALJ decisions would interfere with the discretion and deference afforded to the Secretary to implement the Medicare Statute.

Plaintiffs do not dispute that deference is owed to the Secretary's discretion to allow individual adjudication of Medicare claim appeals. D. Mem. at 16-17. The Secretary's decision *not* to be bound by prior ALJ rulings is plainly expressed in the Medicare statute and regulations. D. Mem. at 13-15, 17. Plaintiffs, however, assert that a favorable ALJ ruling estops the Secretary from denying TTFT treatment "in all future claims by Mrs. Oxenberg." Pl. Reply at 21. There is no individual adjudication if the Secretary cannot review each claim appeal separately and approve or deny it on its own merits. *Almy*, 679 F.3d at 311 (noting that lower-

---

[3]   Plaintiffs' assertion that the Secretary never identified how collateral estoppel would conflict with a statute or frustrate congressional intent is patently false. *Compare* Pl. Reply at 19, *with* D. Mem. at 12-20.

5

level decisions cannot deprive the Secretary of the authority to determine when a device is reasonable and necessary "*any more than the diverse decisions of district courts or courts of appeals throughout the country could bind the Supreme Court.*") (emphasis added).

Plaintiffs still fail to cite any case finding that ALJ-level decisions are binding upon the Secretary. Meanwhile, the Third, Fourth, Fifth, Seventh, Ninth, and D.C. Circuits have rejected similar attempts to bind federal agencies to non-precedential decisions in lower-level administrative appeals. *See Taransky*, 760 F.3d at 319; *Balko*, 555 F. App'x at 193; D. Mem. at 17-20. Plaintiffs' attempt to distinguish certain of these cases does not disturb their central point that a lower-level adjudicator (such as an ALJ) cannot bind the Secretary. Pl. Reply at 20-22.

### 3. The elements of collateral estoppel are absent here.

Even if favorable ALJ decisions were capable of preclusive effect (which they are not), the elements of collateral estoppel are absent here. As noted above, collateral estoppel cannot apply as to Plaintiff Lewis, because the unfavorable decision on appeal (dated May 30, 2019) *predates* his favorable ALJ decision (dated October 24, 2019). *See infra* § IV.A.

Nor does collateral estoppel apply as to either Plaintiff, because the *identical* issue was not previously adjudicated. In order to have an identity of issues in separate claim appeals, an earlier decision must have found that Medicare coverage broadly exists for TTFT. However, Oxenberg's June 3, 2019 favorable ruling states: "[W]hile the ALJ does not reject the current LCD, the ALJ declines to give it controlling weight. The ALJ concludes that [TTFT] was medically reasonable and necessary *in this case*, and Medicare covers *this* service." Ex. A to Pl. Br. at 6.[4] The ALJ's "Conclusions of Law" determined that coverage existed *only* for the

---

[4] Because the LCD in effect at the time denied coverage for TTFT, a decision broadly granting coverage would improperly challenge the LCD's validity. *See* D. Mem. at 25; 42 C.F.R. § 405.1062(b)-(c).

6

specific dates of service at issue. *Id.* Likewise, the favorable ruling in Lewis merely determined that "Medicare coverage requirements have been met *for the dates of service at issue*." Ex. F to Pl. Br. at 4 (10/24/19 Favorable Decision) (emphasis added).

Meanwhile, Plaintiffs' "materiality" argument misses the mark. Pl. Reply at 2-3. The issue here is not whether Plaintiffs' condition changed on a month-to-month basis; it is instead that the ALJ rulings were expressly limited to certain time periods, never adjudicated whether coverage existed at other time periods, and lacked authority to determine that coverage existed for "all future claims." Pl. Reply at 21.

Plaintiffs' choice to file claim appeals meant that any favorable decision would not have preclusive effect. Plaintiffs could have challenged the LCD or petitioned CMS for a National Coverage Determination under entirely separate channels of review. D. Mem. at 25-26. If Plaintiffs had been successful, they could have obtained a binding determination as to whether TTFT is a covered Medicare benefit, which would address their concerns about re-litigating that issue in the future. Instead, Plaintiffs *chose* to seek the limited relief available in a claim appeal and "cannot circumvent" the "distinct path provided for beneficiaries to secure broader coverage determinations" by asserting that a successful claim appeal has the same broad and binding effect as a local or national coverage determination. *Porzecanski v. Azar*, 943 F.3d 472, 486, 486 n.12 (D.C. Cir. 2019).

Along the same lines, Plaintiffs have not shown they actually litigated the issue of whether Medicare broadly covers TTFT in their claim appeals. Indeed, in support of their motion for summary judgment, Plaintiffs did not include any records from their favorable claim appeals other than the ALJ decisions. *See* Dkt. No. 12. Given that those decisions solely concern Medicare coverage for specific coverage dates, there is no evidence that Plaintiffs

litigated any broader issue concerning Medicare coverage for TTFT.  Ex. A & F to Pl. Br.  In the decision presently on appeal, Plaintiff Oxenberg stated that she was "not challenging the LCD through the claim appeal process" and asked the ALJ to "find for coverage in *an individual case* without considering the validity or invalidity of [the] LCD."  CAR at 119 (emphasis added). Because Oxenberg expressly disclaimed that she was seeking a broad coverage ruling, that issue was never litigated.  As such, Plaintiffs cannot meet the second element of collateral estoppel.

### 4. It would be unfair to apply collateral estoppel offensively against the Secretary.

Plaintiffs' assertion that collateral estoppel could be applied offensively against Medicare beneficiaries is gravely disconcerting and wrong as a matter of law.  Pl. Reply at 20, 23.  In Plaintiffs' view, if a patient suffering from GBM loses an administrative appeal and fails to seek further review, they would be forever estopped from seeking Medicare coverage for TTFT.  That is morally repugnant.  Medicare beneficiaries, including those unrepresented by counsel and paying for treatment out-of-pocket, should not be permanently denied coverage by token of a single un-appealed ALJ decision.  Plaintiffs' position is also wrong as a matter of law, because collateral estoppel of ALJ decisions cannot apply where the Medicare statute and regulations expressly give beneficiaries the right to *de novo* review for each claim they file.  *See* D. Mem. at 4-5, 12-15.[5]

Although Plaintiffs assert that it would be unfair to deny their assertion of collateral estoppel, it is undisputed that collateral estoppel could only be applied to the claims presently on appeal.  Pl. Reply at 23-24.  Plaintiffs' concern about repeated litigation is baseless given that the 2019 LCD applies to future claims they may file.  D. Mem. at 31-32; Pl. Reply at 5 ("No other

---

[5] Plaintiffs' reliance on *Cannon v. U.S.* is misplaced because that case involved defensive collateral estoppel in the non-Medicare context.  2019 WL 5550065 at *4-5 (S.D. Cal. Oct. 28, 2019); Reply at 23.

claims are at issue and no prospective relief is sought."), 23-24.  In any event, the fairness inquiry is not a balancing of the equities.  Instead, a "finding of fairness *to the defendant* is [] a necessary premise to the application of offensive collateral estoppel." *Raytech Corp. v. White*, 54 F.3d 187, 195 (3d Cir. 1995) (emphasis added).

The Court should exercise its discretion not to apply offensive collateral estoppel against the Secretary as a result of a single un-appealed ALJ decision.  Plaintiffs agree that the United States "is in a unique position as a litigant."  Pl. Reply at 13.  It remains undisputed that there are hundreds of thousands of pending ALJ appeals and nearly 40,000 ALJ appeals filed in 2019, of which at least over 5,000 were beneficiary appeals.  Pl. Reply at 6.  Accordingly, the policy reasons expressed in *Parklane* and *Mendoza*—namely that the Secretary is party to a far greater number of cases than any private entity and does not devote precious resources to litigating those appeals—militate against the application of collateral estoppel to ALJ decisions.  D. Mem. at 28-29.  Those concerns are not alleviated by mutual collateral estoppel, because the Secretary would be forced to devote Medicare resources to actively litigate thousands of ALJ appeals to avoid the risk that a beneficiary would be entitled to coverage in perpetuity.

> **B. Plaintiffs Have Abandoned All Claims Other than Collateral Estoppel.**

Plaintiffs have both expressly and implicitly abandoned their causes of action based on the "merits of the underlying claims."  Pl. Reply at 24-25.  Plaintiffs chose to move for summary judgment before the Certified Administrative Record was available, arguing that the resolution of this case "turns solely on an issue of law"—collateral estoppel.  Pl. Br. at 1.  Plaintiffs' opening brief did not discuss any other causes of action or legal bases for appeal.  Plaintiffs' brief also did not: (i) seek "partial" summary judgment on collateral estoppel; (ii) reserve their right to separately address the merits of the administrative decisions; or (iii) seek to bifurcate the

9

collateral estoppel issue from the merits. During multiple status conferences, Plaintiffs focused solely on the issue of collateral estoppel. Notably, during the April 3, 2020 conference, Plaintiffs did not dispute the Secretary's point that they had abandoned challenges other than collateral estoppel. Nor did Plaintiffs address any issue other than collateral estoppel in the Rule 26(f) Report. Dkt. No. 11.

This Court is sitting in an appellate fashion, and it is well-established that "an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal." *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005). Plaintiffs' attempt to file successive summary judgments would also generally be disallowed before a trial court. *See Ware v. Hosp. of the Univ. of Pa.*, 2016 WL 4702117, at *7 (E.D. Pa. Sept. 8, 2016) (courts "do not approve in general the piecemeal consideration of successive motions for summary judgment, since defendants might well normally be held to the requirement that they present their strongest case for summary judgment when the matter is first raised.") (citation omitted). Nothing prevented Plaintiffs from arguing the merits of the decisions on appeal in their opening brief. *See Brown v. City of Syracuse*, 673 F.3d 141, 147 n.2 (2d Cir. 2012) (recognizing that "successive motions for summary judgment may be procedurally improper if the arguments in the second motion could have been raised in the first motion"). Accordingly, the Court's ruling on collateral estoppel should be fully dispositive of this litigation.

### IV. PLAINTIFFS' IRRELEVANT EVIDENCE AND ARGUMENT OUTSIDE OF THE ADMINISTRATIVE RECORD SHOULD BE EXCLUDED

This case must be decided upon the relevant administrative record. *See* 42 U.S.C. § 405(g); D. Mem. at 10-12. Accordingly, Plaintiffs' subsequent favorable decisions, discussion on unrelated litigation, and unsupported assertions should be excluded.

### A.     Plaintiffs' Subsequent Favorable Decisions Should Be Excluded.

The Secretary moved to exclude the subsequent favorable decisions, which are dated on or after the unfavorable decisions presently on appeal.  *See* D. Mem. at 10-12; Exs. B, C, F to Pl. Br.  In response, Plaintiffs argue that the Consolidated Administrative Record contains the subsequent favorable decisions for both beneficiaries and thus they should be considered.  Pl. Reply at 4 (citing CAR 6-47 (Oxenberg), 731-39 (Lewis)).  Plaintiffs also expressly withdraw their request for prospective equitable relief and concede that only the unfavorable decisions presently on appeal are at issue.  Pl. Reply at 5.  Plaintiffs cannot now argue that those subsequent favorable decisions were before the ALJs who rendered the earlier unfavorable decisions that are currently at issue.

Although Plaintiffs included the subsequent favorable decisions in their appeals to the Council, they escalated these cases to federal court before they could be heard by the Council.  Where, as here, an ALJ decision is on review, documents that were not before an ALJ at the time a decision was made are considered outside the relevant administrative record.  *See* D. Mem. at 11; *Johnson v. Berryhill*, 2018 WL 7813741, at *5 (E.D. Pa. Dec. 19, 2018) ("It is well established that evidence that was not before the ALJ cannot be considered by a district court in its determination of whether or not the ALJ's decision was supported by substantial evidence, even if it was submitted to the Appeals Council.  The only evidence that may be considered in assessing whether substantial evidence supports the ALJ's decision is the administrative record at the time of the ALJ's decision.") (citing *Matthews v. Apfel*, 239 F.3d 589, 593-94 (3d Cir. 2001)).

Additionally, Plaintiffs cite no case on point holding that their subsequent favorable decisions can somehow estop the earlier ALJ decisions presently on appeal.  Pl. Reply at 22.

11

Rather, Plaintiffs rely on inapposite cases about parallel state and federal litigation. In any event, Third Circuit law requires that the issue was "previously adjudicated." D. Mem. at 23-24. Plaintiffs do not provide any authority that the pendency of an appeal affects the order of which case was adjudicated first. Indeed, the Third Circuit has said that the pendency of an appeal does not prevent the offensive use of a decision for preclusive purposes. *See United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009) ("the pendency of an appeal does not affect the potential for res judicata flowing from an otherwise-valid judgment."). By extension, Plaintiffs cannot apply a later ALJ decision to collaterally estop an earlier-decided ALJ decision simply because that earlier case remains pending on administrative appeal. Accordingly, Plaintiffs' subsequent favorable ALJ decisions should be excluded because they were not before the ALJs who rendered their earlier unfavorable decisions that are now under review. On that basis alone, Plaintiff Lewis's collateral estoppel argument fails because he lacks *any* favorable ALJ decisions predating his ALJ unfavorable decision.

    **B.**   **Plaintiffs' New Discussion of Unrelated Litigation Should be Excluded.**

  On reply, Plaintiffs discuss unrelated litigation in D.D.C. involving the Secretary (*Lewis v. Azar*) and cherry-pick a few pages from the Secretary's brief in that case. Pl. Reply at 9-10; Pl. Ex. J. Plaintiffs also discuss an administrative decision concerning the original LCD for TTFT. Pl. Reply at 7-8; Pl. Ex. L. These documents are outside of the administrative record, which mandates their exclusion and Plaintiffs' argument based thereon. Additionally, the Court should exclude from its consideration the exhibit and argument on the administrative decision concerning the original LCD, which was raised for the first time in a reply brief. *See Alston v. Forsyth*, 379 F. App'x 126, 129 (3d Cir. 2010) ("There is cause for concern where a movant presents new arguments or evidence for the first time in a summary judgment reply brief,

12

particularly if the District Court intends to rely upon that new information in granting summary judgment to the movant."); *Anspach v. City of Philadelphia*, 503 F.3d 256, 259 n.1 (3d Cir. 2007) (observing that absent compelling circumstances, "failure to raise an argument in one's opening brief waives it"). Because Plaintiffs agree that non-mutual collateral estoppel does not apply to the United States, any arguments made or decisions issued in these cases is also irrelevant. D. Mem. at 28-29; Pl. Reply at 10 n.7.

Finally, even if these cases were capable of further consideration, they would still be irrelevant. In *Lewis v. Azar*, the Secretary invoked the preclusive effect of an earlier district court judgment in a case between the same parties, which resolved the same issues. When a federal court judgment resolves an issue between two parties, mutual offensive collateral estoppel can be applied against the Secretary in a later case between those parties, even if the effect of that issue preclusion is to resolve a claim for Medicare coverage.[6] Unlike this case concerning an assertion of collateral estoppel against the government based on an ALJ decision, *Lewis* concerns the Secretary's invocation of collateral estoppel based on a district court decision—not an ALJ decision. Pl. Ex. J. Meanwhile, Plaintiffs in this case did not challenge the original LCD, and the regulations they cite explicitly reject their assertion that the outcome an LCD challenge mandates the reversal of the claims at-issue. Pl. Reply at 7-8. To the contrary, as to past claims, a successful LCD challenge applies only to the individual claims that were part of that challenge. 42 C.F.R. §§ 426.420, 426.460; D. Mem. at 25-26.

---

[6] To the extent that the Secretary's opening brief in this case suggested that mutual offensive collateral estoppel is categorically unavailable against the federal government, the Secretary withdraws that argument. The Secretary similarly withdraws any argument that, in Medicare coverage cases, the Appropriations Clause limits the normal application of mutual offensive collateral estoppel on the basis of a final judicial judgment.

**C.     Plaintiffs' Unsupported Assertions Should be Excluded.**

Plaintiffs do not dispute that the unsupported assertions in their moving brief should be excluded.  D. Mem. at 12.  Plaintiffs' guess about the number of beneficiaries represented by counsel at the ALJ-level should also be excluded.  Pl. Reply at 6, 19.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court grant his cross-motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/ Veronica J. Finkelstein
     for Gregory B. David
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Eric S. Wolfish
ERIC S. WOLFISH
Special Assistant United States Attorney/
Assistant Regional Counsel, HHS
Eric.Wolfish@hhs.gov

/s/ Matthew E. K. Howatt
MATTHEW E. K. HOWATT
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
Tel:  215-861-8335
Fax:  215-861-8618
Matthew.Howatt@usdoj.gov

Dated:   May 11, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused a true and correct copy of the foregoing sur-reply to be served on counsel for all parties via the Court's CM/ECF system.

/s/ Matthew E. K. Howatt
MATTHEW E. K. HOWATT
Assistant United States Attorney

Dated:  May 11, 2020