**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LYNN OXENBERG and RONALD LEWIS

*Plaintiffs,*

v.

ALEX M. AZAR II, in his official capacity
as Secretary of the United States Department
of Health and Human Services,

*Defendant.*

Civil Action No. 20-738-CMR

**THE DEFENDANT'S OPPOSITION TO THE PLAINTIFFS' MOTION FOR LEAVE TO
FILE SUPPLEMENT TO MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

The plaintiffs' motion for leave to file supplement to motion for summary judgment [Dkt. No. 30] (the "Motion") seeks to introduce discovery obtained in another case.  Prior to addressing the plaintiffs' Motion, however, the Court should decide the Secretary's Rule 12(b)(1) motion to dismiss for lack of standing.  Dkt. No. 32.  If this case is dismissed pursuant to Rule 12(b)(1), the plaintiffs' Motion is moot.

If the Court reaches the plaintiffs' motion, it should still be denied.  The plaintiffs repeatedly waived the need for discovery in this action.  Summary judgment is fully briefed.  In addition, the plaintiffs' discovery is inadmissible in this appeal of an administrative decision under section 405(g).  Finally, even if leave to supplement is granted, the plaintiffs' documents support summary judgment in the Secretary's favor.

II.   **ARGUMENT**

    **A.**    **The Court Should Decide the Secretary's Rule 12(b)(1) Motion to Dismiss Before Addressing the Plaintiffs' Motion.**

    On November 13, 2020, the Secretary moved to dismiss the plaintiffs' Complaint for lack of standing.  Dkt. No. 32.  That motion should be decided first.  As the Supreme Court has recognized, "[t]he requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception," and therefore "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (citation omitted); *see, e.g.*, *Cartmell v. Credit Control, LLC*, 2020 WL 113829, at *1 (E.D. Pa. Jan. 10, 2020) (finding that defendant's "motion to dismiss for lack of jurisdiction must be resolved before the motion[] for . . . summary judgment can be addressed.").  Moreover, the discovery proffered in the plaintiffs' Motion is not relevant to the motion to dismiss, and thus deciding the Secretary's motion to dismiss first will not prejudice the plaintiffs.

    **B.**    **The Plaintiffs Have Explicitly Waived Discovery in this Case.**

    The plaintiffs' Motion should be denied because they have repeatedly waived discovery in this action.  In the Report of Rule 26(f) Meeting, the parties agreed that:  "As this case can be decided on administrative records, no discovery is necessary."  *See* Dkt. No. 11 at 2.  The plaintiffs' Motion defies the parties' agreement that this case should be decided on the administrative record and without the introduction of any discovery.

    The plaintiffs also waived the need for discovery during summary judgment briefing.  In response to the plaintiffs' motion for summary judgment, the Secretary argued that the plaintiffs' assertion of collateral estoppel did not meet the essential element of fairness.  Dkt. No. 17 at 27-31.  Among other reasons, the Secretary argued that it would be impracticable to appear in

thousands of ALJ hearings and cited publicly available data from the Government Accountability Office and Federal Register. *Id.* at 2-3, 29. In reply, the plaintiffs did not assert that discovery was necessary, but rather made counter-arguments based on publicly available data regarding the number of annual ALJ appeals. Dkt. No. 22 at 5-6. Notably, the plaintiffs asserted that the Court would have to decide, based on the data already introduced by the parties, the "true number" of appeals by represented beneficiaries. *Id.* at 6-7. The Secretary argued that the undisputed data still showed that the plaintiffs' assertion of collateral estoppel would be unfair to the Secretary. Dkt. No. 26 at 9. Summary judgment has been fully briefed for nearly six months. *See* Dkt. 29 (final summary judgment brief filed on May 19, 2020). Because the plaintiffs explicitly waived discovery and agreed that summary judgment could be decided on the data already before the Court, the plaintiffs' Motion should be denied.

In another tumor treatment field therapy case litigated by the plaintiffs' counsel, the court recently decided summary judgment in the Secretary's favor based on the same data cited by the parties to this case and without the need for discovery. *Christenson v. Azar*, 2020 WL 3642315, at *7 (E.D. Wis. July 6, 2020) ("The Secretary argues that it is administratively impossible to attend each ALJ hearing, noting that there were over 650,000 appeals pending as of September 2016. . . . Plaintiffs dispute this figure, contending there are significantly fewer beneficiary ALJ appeals filed annually (5,148 in 2019), but the court accepts that even several thousand beneficiary appeals filed annually makes it virtually impossible for the Secretary to be represented at every ALJ-level hearing."). Given that summary judgment is fully briefed, and the plaintiffs' discovery is not necessary to render a decision, the Court should decline to consider it.

**C.      The Plaintiffs Cannot Introduce Discovery into a Section 405(g) Appeal.**

Even if the plaintiffs had not waived discovery, their Motion should be denied because there is no discovery in section 405(g) appeals like this.  As the Secretary explained in his summary judgment brief, Dkt. No. 17 at 10-11, section 405(g) appeals are decided on "a certified copy of the transcript of the record including the evidence upon which the finding and decision complained of are based."  Therefore, district courts generally have no fact-finding role in section 405(g) appeals, but are instead tasked with deciding whether the Secretary's final decision is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984).

In *Hummel*, the Third Circuit thus concluded that discovery is unavailable, except with respect to the alleged bias of an ALJ:

> The Social Security Act contains no provision for pre-hearing discovery, and the Administrative Procedure Act does not provide for it. Thus, like most federal administrative proceedings, no pre-hearing discovery is normally available. The provision in section 405(g) authorizing orders for the taking of additional testimony should not, in our view, be construed as a means whereby the discovery provisions of the Federal Rules of Civil Procedure may be imported into the administrative adjudication scheme of the Act.

*Id.* (emphasis added).

Similarly, in *NVE v. Dep't of Health & Human Servs.*, the Third Circuit recognized that there is "a strong presumption against discovery into administrative proceedings born out of the objective of preserving the integrity and independence of the administrative process."  436 F.3d at 195.  The "only" exception to this rule is "in cases involving alleged bias on the part of an agency."  *Id.*  The sole exception to the rule against discovery does not does not apply here, because Plaintiffs do not allege that the ALJ was biased.  *Id.*  Because the Third Circuit has

4

closed the door on any of the purported reasons that the plaintiffs may give for the need for

discovery, their Motion should be denied.[1]

      **D.**      **Even if the Plaintiffs' Discovery were Admitted, it would Support the Secretary's Unfairness Argument.**

Even if the plaintiffs' discovery were was admitted, the data further shows that the

plaintiffs' assertion of collateral estoppel would create an unfair administrative burden on the

Secretary.  The Secretary's summary judgment brief cited a publicly available Government

Accountability Office report, which noted that, from 2014 to 2014, ALJ appeals "experienced the

largest rate of increase in appeals—from 41,733 to 432,534 appeals (936 percent)—during this

period."  *See* Dkt. No. 17 at 3.  The Secretary also cited data in the Federal Register noting that

there were 650,000 pending ALJ appeals as of September 2016.  *Id.*[2]  The plaintiffs, meanwhile,

focus on the data for 2019, which is when the ALJs issued the unfavorable decisions on appeal.

The data for FY 2019 submitted with the plaintiffs' summary judgment reply showed 417,198

ALJ appeals pending and 43,887 ALJ appeals received.  Dkt. No. 22-1 at 6.  The only dispute is

to what extent these numbers should be reduced to account for cases filed by unrepresented

beneficiaries.

Under the Medicare regulations, the *only* instance in which the Secretary cannot elect to

be a party to an ALJ hearing is if the "request for hearing is filed by an unrepresented

beneficiary."  42 C.F.R. § 405.1012(a)(1).  In other words, the Secretary has an opportunity to

---

[1] In *Piekanski v. Azar,*  the plaintiffs' counsel served the Secretary with discovery requests for the same data they offer here.  20-cv-687 (M.D. Pa.).  The Secretary moved for a protective order, citing the Third Circuit's decisions in *Hummel* and *NVE*.  *Id.* Dkt. No. 51-1. The court ultimately ruled that "discovery shall be stayed pending resolution of the outstanding dispositive motions in this case."  *Id.* Dkt. No. 55.

[2] Contrary to the plaintiffs' assertion, this data is not "false," but rather provides context from earlier time periods showing the impracticability of litigating ALJ appeals.

appear in all cases other than those filed by unrepresented beneficiaries.  According to the plaintiffs' newly proffered exhibits, of the 43,887 ALJ appeals filed in FY 2019, only 4,260 (9.7%) were filed by unrepresented beneficiaries.  Dkt. No. 30-1 at 12.  In other words, the Secretary had the opportunity to appear as a party in 39,627 ALJ appeals filed in FY 2019 (90.3% of all appeals).  Assuming that approximately 9.7% of the 417,198 pending ALJ appeals were also filed by unrepresented beneficiaries, the Secretary had an opportunity to appear as a party in an additional 376,730 pending cases.[3]  Adding the new cases (39,627) and the pending cases (376,730) for FY 2019 together, the Secretary had an opportunity to appear in approximately **416,357** ALJ appeals.

Meanwhile, the plaintiffs' interpretation of this data is misleading.  Most importantly, the plaintiffs completely disregard the number of already-pending ALJ appeals (417,198), focusing solely on the fractional number of new appeals received for FY 2019 (43,887).  Because the year when a case was filed makes no difference in terms of the Secretary's opportunity to appear, it is wrong to ignore the number of already-pending ALJ appeals.

The plaintiffs also artificially reduce the volume of ALJ appeals by focusing solely on the number of beneficiary appeals.  The plaintiffs, however, offer no reason why their assertion of collateral estoppel would apply solely to beneficiary appeals.  By the plaintiffs' logic, if an ALJ issues a favorable determination, the Secretary is collaterally estopped, regardless of whether the case concerns a Medicare beneficiary.  *See* Dkt. No. 22 at 17 (the plaintiffs asserting that proceedings before an ALJ "provide a proper basis for invoking collateral estoppel.").

---

[3] Plaintiffs' counsel did not seek discovery regarding the number of already-pending ALJ appeals filed by unrepresented beneficiaries.

Meanwhile, the applicable regulation gives CMS the opportunity to appear in ALJ appeals filed by non-beneficiaries.  42 C.F.R. § 405.1012(a)(1).

The plaintiffs' hypothesis regarding the number of dismissed appeals is unfounded.  The data the plaintiffs cite takes all appeals (newly-filed and already pending) into account and does not identify *when* the appeal was dismissed (*i.e.*, before or after an ALJ hearing).  It may also be the case that unrepresented beneficiary appeals are dismissed at a higher rate than represented beneficiary cases (due to procedural errors, timeliness issues, etc.).  Accordingly, it would not be appropriate to reduce the number of appeals in which the Secretary may have an opportunity to appear by 54%.  And, even if the 416,357 ALJ appeals were reduced by 54%, there are still hundreds of thousands of ALJ appeals in which the Secretary would have an opportunity to appear.

In sum, the plaintiffs' conclusion that there are "only 1,415 cases [in which] an ALJ hearing was presumably held" is deeply flawed.  Dkt. No. 31-1 at 3.  That conclusion overlooks the ALJ appeals pending for 2019 (which outnumber newly-filed cases 10:1), ignores non-beneficiary appeals (which outnumber beneficiary appeals 5:1), and rests on the flawed assumption that more than half of cases will be dismissed before the Secretary has an opportunity to appear.  In any event, the Court is neither required to become a factfinder in this administrative appeal nor decide the precise number of appeals in which the Secretary could have appeared as a party in FY 2019.  Hundreds of millions of Part B claims for coverage are filed annually, and any beneficiary whose claim is denied has the right to choose whether to be represented.  42 C.F.R. § 498.40; *Almy v. Sebelius*, 679 F.3d 297, 304 (4th Cir. 2012).  Whether the relevant number of cases is closer to 1,415 or 416,357, the practice of litigating ALJ appeals "is sufficiently different from the conduct of private civil litigation," such that the Court should

consider the practicability of – and diversion of resources caused by – litigating thousands of ALJ appeals.  *See* Dkt. No. 17 at 29 (quoting *United States v. Mendoza*, 464 U.S. 154, 162-63 (1984)).

       **E.**     **Leave to File the Declaration of Debra M. Parrish Should be Denied.**

The plaintiffs offer no reason to admit the Declaration of Debra M. Parrish ("Parrish Declaration") at this late stage.  The Parrish Declaration concerns a private law firm's practices of representing Medicare beneficiaries in ALJ hearings.  It is plainly outside of the administrative record or publicly available information and should be disregarded for this reason alone.  At the very least, to the extent that the plaintiffs believed that information to be relevant, they could have offered the Parrish Declaration during summary judgment briefing.  Given that the Parrish Declaration does not concern any newly-acquired information, there is certainly no reason to admit it six months after summary judgment briefing concluded, and without the opportunity for the Secretary's counsel to test that information.

**III.**    <u>**CONCLUSION**</u>

For the foregoing reasons, the plaintiff's motion for leave to file supplement to their motion for summary judgment should be denied.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/ Veronica J. Finkelstein
   for Gregory B. David
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Eric S. Wolfish
ERIC S. WOLFISH
Special Assistant United States Attorney/
Assistant Regional Counsel, HHS
Eric.Wolfish@hhs.gov

/s/ Matthew E. K. Howatt
MATTHEW E. K. HOWATT
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
Tel:  215-861-8335
Fax:  215-861-8618
Matthew.Howatt@usdoj.gov

Dated:   November 13, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused a true and correct copy of the foregoing

Opposition to the Plaintiffs' Motion for Leave to File Supplement to Motion for Summary

Judgment to be served on all counsel of record via the Court's CM/ECF system.


/s/ Matthew E. K. Howatt
MATTHEW E. K. HOWATT
Assistant United States Attorney


Dated:  November 13, 2020